UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| | * | |
| TRUSTEES OF THE ELECTRICAL WELFARE TRUST FUND, ET AL., | * | |
| Plaintiffs | * | |
| v. | * | Civil Case No. 8:25-cv-03715-TDC |
| MAX ELECTRICAL CONSTRUCTION CORP., | * | |
| | * | |
| Defendant. | * | |
| | * | |

REPORT AND RECOMMENDATION

This is an action seeking payment of delinquent contributions owed to a multiemployer pension plan under the Employee Retirement Income Security Act ("ERISA") and the Labor Management Relations Act ("LMRA"). Pending before the Court is Plaintiff Trustees of the Electrical Welfare Trust Fund, Trustees of the Electrical Workers Local No. 26 Pension Trust Fund, Trustees of the Electrical Local No. 26 Joint Apprenticeship and Training Trust Fund, Trustees of the Electrical Workers Local No. 26-D.C. Chapter of NECA Labor Management Cooperation Committee, Trustees of the Electrical Workers Local No. 26 Individual Account Fund, Jonathan Thomas, and Thomas Meyers's ("Plaintiffs") Motion for Default Judgment. ECF No. 11. For the reasons discussed below, I recommend that the Motion be granted, in part, and denied, in part.

BACKGROUND

According to Plaintiffs' Complaint, the Plaintiff funds are Maryland-based multiemployer benefit plans. ECF No. 1, at 4. Plaintiff Jonathan Thomas "brings this action in his capacity as

1

collection agent for the National Electrical Contractors Association, Washington, D.C. Chapter ('NECA')." *Id.* at 3. NECA is "a national nonprofit organization with chapters throughout the United States serving the electrical workers industry and is funded by contributions under various collective bargaining agreements." *Id.* at 4. Plaintiff Trustees for the Electrical Workers Local No. 26-D.C. Chapter of NECA Labor Management Cooperation Committee ("LMCC") "is a tax-exempt organization that aims to improve labor relations between labor and management in the union electrical industry and is funded by contributions under various collective bargaining agreements." *Id.* Plaintiff Thomas Meyers "brings this action in his capacity as collection agent for the Local No. 26, International Brotherhood of Electrical Workers ('Local 26')." *Id.* at 3. Local 26 "is a labor organization within the meaning of 29 U.S.C. §152(5) representing employees in an industry affecting interstate commerce." *Id.* at 5. Employers, like Defendant Max Electrical Construction Corp., agree to contribute to employee benefit funds pursuant to collective bargaining agreements with the International Brotherhood of Electrical Workers ("IBEW") or one of its affiliated local unions. *Id.* at 5.

According to Plaintiffs, Defendant became a signatory to multiple bargaining agreements by signing Letters of Assent. ECF No. 11-2, at 2–3. Pursuant to the agreements, Defendant must make monthly contributions to Plaintiff funds, NECA, and LMCC and submit monthly remittance reports to the Plaintiffs. *Id.* at 3. On May 15, 2025, Plaintiffs and Defendant agreed to a settlement pursuant to which Defendant agreed to pay $79,550.02, consisting of one lump sum payment of $69,426.68, and ten monthly installments of $1,012.33. ECF No. 12, at 4. However, Defendant failed to pay Plaintiffs the monthly contributions, as well as the separate monthly payments for June 2025 through September 2025. *Id.* at 5. Accordingly, on November 12, 2025, Plaintiffs filed

suit in this Court seeking payment of delinquent contributions of $41,959.24, liquidated damages of $8,539.59, and $11,731.73 under the Settlement Agreement.  ECF No. 1, at 10.

During the pendency of the litigation, Defendant made additional payments relevant to the pending Motion.  ECF No. 12, at 5.  Despite these payments, Defendant has "failed to pay for the January 2026 contribution month, has failed to provide the corresponding remittance report for January 2026, has also failed to pay the interest on late-paid contributions for the period August 2024 through December 2025, and has failed to pay interest on contribution month January 2026, liquidated damages, and costs."[1]  *Id.*  Altogether, Plaintiffs allege that, as of the date of the filing of Plaintiffs' Supplement in Support of its Motion for Default Judgment, Defendant owes: 1) $10,478.06 in contributions for January 2026; 2) "interest on all delinquent contributions from the date due until the date paid in the estimated amount of at least $2,067.77[;]" 3) at least $2,034.77 in liquidated damages; 4) $709.13 due to Local 26 for the work completed in January 2026; and 5) $21,855.07 due as a result of Defendant's breach of the settlement agreement, consisting of the ten monthly installments totaling $10,123.34 and $11,731.73 in liquidated damages arising from the breach.  *Id.* at 6.  In total, Plaintiffs allege Defendant owes them $37,144.80, exclusive of attorney's fees and costs related to the present case.  *Id.* at 6.

On November 13, 2025, a summons was issued as to Defendant.  ECF No. 2.  On December 23, 2025, Plaintiffs returned the summons as executed on Defendant.  ECF No. 7.  According to Plaintiffs' process server, he served Defendant's President on November 20, 2025.  ECF No. 7, at 2.  Defendant's response to Plaintiffs' Complaint was due to be filed on or before December 11,

---

[1] Plaintiffs concede that "Defendant made a partial payment of interest on May 20, 2025, in the amount of $1,022.00 for the contribution months of August 2024 through March 2025, on December 19, 2025, made a partial payment of $8,885.62 for contribution month October 2025, and on March 20, 2026, made a payment of $33,861.11, which was applied to contribution months October through December 2025," ECF No. 12, at 5.

2025. *Id.* at 1. Defendant has failed to make an appearance, answer the Complaint, or otherwise take any action in this case.

On March 5, 2026, Plaintiffs moved for a Clerk's Entry of Default against Defendant, ECF No. 8; the Clerk entered an Order of Default against Defendant four days later. ECF No. 9. The Clerk's Office issued a Notice of Default to Defendant on the same day. ECF No. 10. On March 26, 2026, Plaintiffs moved for default judgment against Defendant in the amount of $50,224.31 consisting of the $37,144.80 detailed above and $13,079.51 in attorney's fees and costs. ECF No. 11, at 1–2. Plaintiffs also sought an Order: 1) requiring Defendant to provide a remittance report for January 2026; 2) restraining and enjoining Defendant; and 3) requiring Defendant to pay Plaintiffs' future attorney's fees and costs incurred while enforcing any judgment from this Court. ECF No. 11, at 2. In support, Plaintiffs attached the affidavit of Michael McCarron, Plaintiff Funds' and LMCC's administrator, which details the amount Defendant owes to NEBF. ECF No. 11-2, at 1–7. Plaintiffs also attached the affidavit of Christoper Leins, Plaintiffs' counsel, in support of Plaintiffs' request for reasonable attorney's fees and costs already incurred. ECF No. 11-3, at 1–3.

On March 30, 2026, the case was assigned to my Chambers for the limited purpose of a Report and Recommendation regarding the pending Request for Entry of Default Judgment. ECF No. 13. On April 27, 2026, the Court held a Hearing on the pending Motion. ECF No. 15. Defendant failed to appear. During the Hearing, Plaintiffs clarified that: 1) their request to enjoin and restrain Defendant is a request that the Court require Defendant to provide the remittance reports it must provide under the bargaining agreements; and 2) they agreed to delay their request for future attorney's fees and costs so long as the Court's Order was without prejudice to Plaintiffs later seeking such fees and costs.

4

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 55(b) governs the entry of default judgments, which may be entered by the Clerk of the Court "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation," and the defendant is in default for failing to appear. Fed. R. Civ. P. 55(b)(1). The entry of default judgment is a matter within the discretion of the Court. *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002)). Although "the Fourth Circuit has a 'strong policy that cases be decided on the merits,'" *Disney Enters., Inc. v. Delane*, 446 F. Supp. 2d 402, 405 (D. Md. 2006) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), "default judgment is available when the 'adversary process has been halted because of an essentially unresponsive party.'" *Id.* (quoting *Lawbaugh*, 359 F. Supp. 2d at 421). Default judgment is proper when a defendant is unresponsive. *See Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896–97 (4th Cir. 1987) (upholding a default judgment awarded where the defendant lost its summons and did not respond within the proper period); *Disney Enters., Inc.*, 446 F. Supp. 2d at 405–06 (finding appropriate the entry of default judgment where the defendant had been properly served with the complaint and did not respond, despite repeated attempts to contact him).

When considering a motion for default judgment, the Court takes as true all well-pled factual allegations in the complaint, other than those pertaining to damages. Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." (citation and internal quotation marks omitted)).

In the Fourth Circuit, district courts analyzing requests for default judgment have applied the standards articulated by the United States Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to determine whether allegations within the complaint are "well-pleaded." *See, e.g.*, *Russell v. Railey*, No. DKC 08-2468, 2012 WL 1190972, at *2–3 (D. Md. Apr. 9, 2012); *United States v. Nazarian*, No. DKC 10-2962, 2011 WL 5149832, at *2–3 (D. Md. Oct. 27, 2011); *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544–45 (D. Md. 2011). Where a complaint offers only "labels and conclusions" or "naked assertion[s] devoid of further factual enhancement," the allegations therein are not well-pled and, consistent with the Court's discretion to grant default judgment, relief based on those allegations should be denied. *Balt. Line Handling Co.*, 771 F. Supp. 2d at 544–45 (internal quotation marks omitted) ("The record lacks any specific allegations of fact that 'show' why those conclusions are warranted.").

## ANALYSIS

### I.    Jurisdiction and Venue

This court has jurisdiction over Plaintiffs' claim pursuant to section 502(e) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(e)(1). 29 U.S.C. § 1132(e)(1) provides that "[e]xcept for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, [or] fiduciary . . . ." Plaintiffs Funds' action arises under sections 502(g)(2) and 515 of ERISA, 29 U.S.C. §§ 1132(g)(2), 1145. ECF No. 1, at 7–8. Plaintiffs Funds' trustees are fiduciaries of such funds. *Id.* at 5. Therefore, all jurisdictional requirements of ERISA are met as to Plaintiff Funds' claims.

6

Plaintiffs LMCC, NECA, and Local 26 seek relief under section 301 of the Labor Relations Management Act.  *Id.* at 8–9.  The relevant section provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  Plaintiff Trustees of LMCC and NECA "have standing to sue under section [301] as third-party beneficiaries of a collective bargaining agreement."  *Int'l Painters & Allied Trades Indus. Pension Fund v. Cap. Restoration & Painting Co.*, 919 F. Supp. 2d 680, 686 (D. Md. 2013) (citing 29 U.S.C. § 185(a)).  Local 26 is a labor organization within the meaning of 29 U.S.C. § 152(5) representing employees in an industry affecting interstate commerce.  ECF No. 1, at 5.

Venue is proper in this judicial district because the Plaintiff Funds are administered in this district.  *Id.* at 4; *see* 29 U.S.C. § 1132(e)(2) (stating that venue is proper "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found . . .").

## II.    Employee Retirement Income Security Act Claim

Plaintiffs allege violations of both ERISA and their collective bargaining agreements pursuant to LMRA.  "As the recovery would be the same under both statutes, the Court will analyze these claims under ERISA."  *Trs. of Elec. Welfare Tr. Fund v. Tech. Serv. Grp., LLC*, No. GJH-14-3018, 2016 WL 5462800, at *3 (D. Md. Sep. 27, 2016).

Section 515 of ERISA provides that:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms

> of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.  Employers who fail to make such contributions are liable in a civil action for unpaid contributions, interest on the unpaid contributions, liquidated damages, reasonable attorney's fees and legal costs, and any other relief the Court deems appropriate.  29 U.S.C. § 1132(a), (g).  To establish ERISA liability, Plaintiffs must show that Defendant was obligated to make contributions to NEBF under the terms of a collective bargaining agreement and that Defendant failed to make such contributions.

Plaintiffs have sufficiently established the above elements.  Plaintiff Funds are multiemployer plans within the meaning of ERISA.  ECF No. 1-4, at 1; 29 U.S.C. § 1002(37)(A).  Defendant is an employer that has agreed to contribute to the Funds by assenting to collective bargaining agreements with a labor union.  ECF No. 1, at 3, 5.  The collective bargaining agreements to which Defendant assented "required Defendant to make contributions to the Funds, the NECA and the LMCC at specified rates, and to be bound to the terms and conditions of the Agreements and Declarations of Trust . . . establishing the Funds."  *Id.* at 5.  Plaintiffs have provided an itemization of damages, which details that Defendant failed to pay Plaintiff Funds $37,144.80 that it owed.  ECF No. 12, at 176.  Therefore, ERISA's elements are met, and Plaintiffs have established liability.

### III.    Damages

If the complaint alleges facts sufficient for the Court to find liability, then the Court turns to damages.  *Walsh v. Yost*, No. 8:20-cv-00449-PX, 2022 WL 9362277, at *2 (D. Md. Oct. 14, 2022).  Damages are limited to what is requested in the complaint.  Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the

pleadings."). Because an allegation "relating to the amount of damages" is not deemed admitted based on a defendant's failure to deny in a required responsive pleading, Fed. R. Civ. P. 8(b)(6), the damages request must be supported by evidence introduced either at a hearing, by affidavit, or by other records. *See Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794–95 (D. Md. 2010) ("the Court may only award damages without a hearing if the record supports the damages requested"). Plaintiffs may recover: (1) delinquent contributions; (2) any interest on the delinquent contributions; (3) liquidated damages in "an amount equal to the greater of . . . (i) interest on the [delinquent] contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the delinquent contributions; (4) reasonable attorney's fees and costs; and (5) "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2). "[W]hile the Court may hold a hearing to prove damages, it is not required to do so. It may instead rely on 'detailed affidavits or documentary evidence to determine the appropriate sum.'" *Trs. of Nat'l Elec. Benefit Fund v. All Nu Elec. Contracting Corp.*, No. GJH-22-0544, 2023 WL 1416553, at \*2 (D. Md. Jan. 31, 2023) (citing *Adkins v. Tesco*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001)).

The supporting documentation establishes the amount due. Plaintiffs' affidavit and itemization establishes that Defendant owed Plaintiff Funds $37,144.80. ECF No. 12, at 6, 176. The agreements to which Defendant assented required it to make monthly contributions to Plaintiff funds, as well as dues to Local 26, in specified amounts. *Id.* at 3, 6. Based on the most recent information available to Plaintiffs, Defendant owed $11,187.19 in contributions and dues for January 2026. *Id.* at 6, 176. Additionally, the parties previously agreed to a Settlement Agreement for the collection of previously unpaid amounts that Defendant had agreed to contribute. *Id.* at 4–5; 171. In total, Defendant owes $21,855.07 arising out of its failure to comply with the Settlement

Agreement. *Id.* at 6, 176.  ERISA's enforcement provision permits the recovery of such damages. *See* 29 U.S.C. § 1132(g)(2).  As Plaintiffs calculated, a 0.019% interest rate per day between the date payments were due and February 28, 2026, amounts to $2,067.77 in interest.  *Id.* at 6, 176.  Additionally, liquidated damages resulting from Defendant's delinquent contributions equals $2,034.77.  *Id.*  Therefore, Defendant presently owes NEBF a total of $37,144.80.  *Id.* at 6.  Further, Plaintiffs have provided documentation demonstrating that they have spent an additional $13,079.51 in attorney's fees and legal costs pursuing this action.  ECF No. 11-3, at 3.  Each of these demands should be awarded.

Plaintiffs' Motion requested future attorney's fees and costs without specifying the amount of fees and costs.  Upon questioning from the Court at the Hearing, Plaintiffs agreed to withdraw their request so long as the Court's Order was without prejudice as to any future relief Plaintiffs may seek arising out of Defendant's conduct as alleged in the Complaint.

Finally, the Court has the authority to order injunctive relief when granting a Motion for Default Judgment.  *See Trs. of the Nat'l Asbestos Workers Pension Fund v. Ideal Insulation Inc.*, No. CIV. ELH-11-832, 2011 WL 5151067, at *4–5 (D. Md. Oct. 27, 2011) (citations omitted). According to Plaintiffs, Defendant has failed to submit the January 2026 remittance report, thereby preventing Defendant from calculating the precise amount of money owed to the funds.  ECF No. 11-1, at 5.  Plaintiffs request that the Court order Defendant to provide the missing report.  ECF No. 11, at 2.  Plaintiffs additionally request that the Court "restrain and enjoin Defendant" for failing to submit monthly remittance reports to the Fund.  *Id.*  As Plaintiffs clarified at the Hearing on the Motion, they specifically request that the Court Order Defendant to comply with its obligations under the agreements to submit remittance reports going forward.  Plaintiffs' requests for injunctive relief, as clarified, should be granted.  *Tech. Serv. Grp., LLC*, 2016 WL 5462800, at

10

*7 (ordering defendant to allow plaintiff to conduct an audit for the purpose of determining the accuracy of the contributions to the funds, as the collective bargaining agreements allowed).

## CONCLUSION

For the aforementioned reasons, it is recommended that Plaintiffs' Motion for Default Judgment be: 1) granted in the amount of $50,224.31; and 2) granted such that Defendant shall provide the January 2026 remittance report, as well as all future remittance reports the agreements require it to provide.  It is recommended that Plaintiffs' requests otherwise be denied; however, it is recommended that the Court allow Plaintiffs to return to the Court to seek additional relief related to the allegations in the Complaint, including, but not limited to, any future attorney's fees and costs incurred while enforcing the Court's Judgment.

Objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5(b).

Date: April 29, 2026

_____/s/_____
Ajmel A. Quereshi
U.S. Magistrate Judge

11